UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JORGE TORRES,

     Plaintiff,

v.                                  Case No.:  6:20-cv-1673-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Jorge Torres seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.   Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on January 20, 2015, alleging disability beginning December 1, 2014. (Tr. 59, 176-77). The application was denied initially on May 8, 2015, and on reconsideration on June 15, 2015. (Tr. 59, 74). Plaintiff requested a hearing and on December 30, 2015, a hearing was held before Administrative Law Judge Bruce Landrum. (Tr. 27-58). On March 28, 2016, ALJ Landrum entered a decision finding Plaintiff not disabled from December 1, 2014, through the date of the decision. (Tr. 13-22). Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on June 11, 2016. (Tr. 1-7). Plaintiff filed a civil action appealing the Commissioner's decision. The Court entered a decision on June 5, 2017, remanding the action to the Commissioner for further proceedings. (Tr. 1364-73). The Court directed the Commissioner to instruct the ALJ to, among other things, "give close scrutiny to the VA's disability determination." (Tr. 1372).

On remand, the claim was assigned to Administrative Law Judge Kathleen H. Eiler ("ALJ"). The ALJ held another hearing on March 2, 2018. (Tr. 1301-31). On May 14, 2018, the ALJ entered a decision finding Plaintiff not disabled from December 1, 2014, through the date of the decision. (Tr. 1384-96). Plaintiff requested review, and on August 13, 2019, the Appeals Council remanded the case to the ALJ. (Tr. 1403-1407). The Appeals Council determined that the May 14, 2018

decision did not adequately comply with the District Court's June 5, 2017 remand order. (Tr. 1405). The Appeals Council found that the ALJ had not closely scrutinized the VA determination and had not adequately considered Plaintiff's posttraumatic stress disorder ("PTSD"). (Tr. 1405-1406).

On remand, the ALJ held a third hearing on January 28, 2020. (Tr. 1272-1300). On March 31, 2020, the ALJ entered a decision finding Plaintiff not under a disability from December 1, 2014, the alleged onset date, through December 31, 2019, the date last insured. (Tr. 1246-65).

Plaintiff initiated the instant action by Complaint (Doc. 1) filed on September 11, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 17).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (Tr. 1249). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of December 1, 2014, through his date last insured of December 31, 2019. (Tr. 1249). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine; degenerative joint disease of the right shoulder and right wrist; left shoulder degenerative joint disease;

hearing loss of the right ear and tinnitus; gastroesophageal reflux disease [GERD]; hernia, status-post hernia repair; posttraumatic stress disorder [PTSD]; anxiety disorder; depression; and alcohol abuse." (Tr. 1249). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 §§ C.F.R. 404.1520(d), 404.1525, and 404.1526). (Tr. 1249).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 [C.F.R. §] 404.1567(b). The claimant could never climb ladders, ropes, or scaffolds but could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. The claimant could frequently reach with the right upper extremity. The claimant must avoid concentrated exposure to noise and workplace hazards. The claimant could apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. The claimant could deal with problems involving a few concrete variables in or from standardized situations. The claimant could never interact with the general public.

(Tr. 1253). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a salesperson, photographic supply equipment; radio repairer; and guard, security. (Tr. 1263).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (35 on the date last insured), education (at least high school), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 1264). Specifically, the ALJ found that Plaintiff could have performed such occupations as:

(1)   marker, DOT[1] 209.587-034, light, unskilled, SVP 2

(2)   router, DOT 222.587-038, light, unskilled, SVP 2

(3)   blade balancer, DOT 701.687-014, light, unskilled, SVP 2.

(Tr. 1264-65). The ALJ concluded that Plaintiff had not been under a disability from December 1, 2014, the alleged onset date, through December 31, 2019, the date last insured. (Tr. 1265).

## II.   Analysis

On appeal, Plaintiff raises the following two issues: (1) whether the ALJ's reasons for giving little weight to Dr. Zincone's opinion are supported by substantial evidence; and (2) whether the ALJ gave sufficient reasons for rejecting Plaintiff's Veterans Administration ("VA") disability rating. (Doc. 21, p. 11, 26).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

### A.     Dr. Zincone

Plaintiff argues that the ALJ erred in assigning little weight to the opinion of John P. Zincone, M.D., a VA psychiatrist. (Doc. 21, p. 26). Plaintiff claims that the reasons offered by the ALJ to discount Dr. Zincone's opinion are not supported by substantial evidence. (Doc. 21, p. 27). The Commissioner contends that the ALJ properly considered and weighed Dr. Zincone's opinion and, together with other relevant evidence, assessed Plaintiff's RFC. (Doc. 21, p. 29). The Court finds the ALJ's reasons for assigning little weight to Dr. Zincone's opinion are unpersuasive.

At step four, an ALJ must properly consider treating, examining, and non-examining physician's opinions and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

Even though examining doctors' opinions are not entitled to deference, an ALJ is nonetheless required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

On August 27, 2018, Plaintiff saw Dr. Zincone for an examination. (Tr. 1992-2008). Plaintiff reported to Dr. Zincone that after leaving the military he had marital issues and no longer lived with his wife, saw all of his children with supervision "as he report[ed] his irritability can fluctuate," and generally gets along with his family with some tension. (Tr. 1993). He last worked in 2014 or 2015 for Home Depot, but "had a blow up on an Arab customer," another employee had to step in, and he was fired. (Tr. 1994). He had not worked since that time. (Tr. 1994). He did try to attend

on-line classes but he failed them and also tried to attend in-person classes but could not because he was nervous about how he would react to crowds. (Tr. 1994).

Plaintiff also reported to Dr. Zincone that his PTSD had gotten worse. (Tr. 2002). Plaintiff noted his anger was more easily triggered and lasted longer. (Tr. 2002). His sleep was erratic and he got 2-3 hours per night with medication, he had nightmares but rarely with medication, avoided crowds, was hypervigilant, had an assault weapon and magazine that he kept near him, checked the doors and perimeter at night, and thought these checks were normal. (Tr. 2002). His mood as reported was erratic, with crying spells. (Tr. 2002). Dr. Zincone noted Plaintiff tried years of therapy but found it not useful and was seeing a psychiatrist . (Tr. 2002).

Dr. Zincone found Plaintiff's symptoms included: depressed mood; anxiety; suspiciousness; panic attacks that occur weekly or less often; chronic sleep impairment; flattened affect, disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work-like setting; inability to establish and maintain effective relationships; and suicidal ideation. (Tr. 2005).

When evaluating Plaintiff's mental status, Dr. Zincone found Plaintiff was well groomed oriented, good eye contact, cooperative, good rapport, normal speech, and generally normal thought processes, insight, judgment, and reasoning. (Tr.

2006). He also found Plaintiff irritable, tense, and with a constricted affect. (Tr. 2006). Dr. Zincone determined Plaintiff could manage his own finances. (Tr. 2006).

After reviewing all available records and conducting an examination, Dr. Zincone found Plaintiff continued to meet DSM V criteria for PTSD. (Tr. 2007). He found Plaintiff's mental health condition remained at a severe level of intensity and frequency. (Tr. 2007). The mental health records showed continued medication treatment for PTSD with multiple medications in use, and being assigned to anger management group to help deal with an escalation in anger. (Tr. 2007). Plaintiff continued to engage in social avoidance, continued to have irritability as an issue that interfered with normal socialization, and continued to have an inability to adapt to his condition thus far. (Tr. 2007). "Given the Vet's MH [mental health] symptoms are severe and persistent, and have led to severe functional impairment in domains necessary for one to obtain and maintain gainful employment, he would be considered to continue to be unable to function in either a physical or sedentary position at this time." (Tr. 2008).

The ALJ summarized Dr. Zincone's report and determined the following:

> On August 27, 2018, John Zincone, M.D., opined that the claimant's mental health symptoms are severe and persistent such that the claimant is unable to obtain and maintain gainful employment in either a physical or sedentary position at this time (Exhibit 10F/65). However, he opined that the claimant is capable of managing his own financial affairs (Exhibit 10F/63). The undersigned gives little weight to Dr. Zincone's opinions as they are based upon the claimant's subjective

report of symptoms and are inconsistent with the substantial of record.

First, his references to the claimant's anger escalation, anxiety flares, irritability, and social avoidance are inconsistent with the clinical signs documented in his examination report. Importantly, the claimant was cooperative with good eye contact despite irritable and tense mood and restricted affect during Dr. Zincone's examination (Exhibit 10F/63). Further, his thought processes were linear, logical, and goal directed with no evidence of paranoia, delusions, or cognitive impairment (Exhibit 10F/63). Likewise, Dr. Zincone's extreme opinions are inconsistent with the other evidence of record, including the absence of crisis stabilization unit or psychiatric hospitalization despite inconsistent outpatient treatment and the generally normal mental status findings of cooperative behavior, memory, and focus (Exhibits 3F/53, 66, 73; 4F/77; 7F/30, 44-45; 8F/20-21, 70, 88, 100, 134, 172, 188, 205; 10F/32, 42, 78-79).

(Tr. 1261).

Plaintiff argues the ALJ listed three reasons for assigning little weight to Dr. Zincone's opinion and none of these reasons are supported by substantial evidence. (Doc. 21, p. 27). First, the ALJ asserted that Dr. Zincone based his findings on Plaintiff's subjective report. Second, Dr. Zincone's own medical records do not support his opinions. And third, Dr. Zincone's opinions are not supported by other evidence of record.

While true that Dr. Zincone considered Plaintiff's subjective complaints, Dr. Zincone also conducted a mental status examination and considered Plaintiff's treatment history. (Tr. 1994-2002, 2006-2007). In the mental status examination, Dr. Zincone noted generally normal findings, with the exception of an irritable and tense

mood, and his affect was constricted. (Tr. 2006). Dr. Zincone supported his finding that Plaintiff's mental health condition remained severe by noting that Plaintiff's irritability continued and presented an issue that interferes with normal socialization and his inability to adapt to his condition thus far. (Tr. 2007-2008).

While not a treating physician because he examined Plaintiff only once, it stands to reason that an ALJ still may not simply cite positive or neutral observations that "create, at most, a trivial and indirect tension" with an examining physician's opinion "by proving no more than that the claimant's impairments are not all-encompassing." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262-63 (11th Cir. 2019). Thus, when a claimant has been diagnosed with a mental or emotional disorder, as here, generalized statements that he was oriented, cooperative, and had good eye contact ordinarily are not an adequate basis to reject a physician's opinion. *Id.* at 1262. Especially, when Dr. Zincone found Plaintiff's irritability continued to be an issue that interfered with normal socialization, such as on a job. (Tr. 2005, 2008).

Further, Dr. Zincone reviewed and relied on Plaintiff's past mental health records in reaching his opinion. (Tr. 2007). Dr. Zincone found that since Plaintiff's last Mental Health Compensation and Pension (MH C & P) examination for PTSD in 2015, his mental health condition remained at a severe level of intensity and frequency. (Tr. 2007). He noted the history of multiple medication treatment for

PTSD, being assigned to anger management for an escalation in anger, and sporadic anxiety flare ups. (Tr. 2007).

The ALJ also found Dr. Zincone's extreme opinion was inconsistent with other evidence of record, including generally normal mental status findings – cooperative behavior, memory, and focus – and the absence of a crisis stabilization unit or psychiatric hospitalization despite inconsistent outpatient treatment. (Tr. 1262). While Plaintiff's history did not include crisis stabilization or psychiatric hospitalization, according to the medical history and Dr. Zincone's opinion, Plaintiff still suffered from PTSD as shown by his records. And as explained above, generally normal mental status findings do not provide a full picture.

In sum, Dr. Zincone's opinions were not based solely on Plaintiff's subjective symptoms, but instead on his mental status examination and prior mental health records. When considering the medical records as a whole, these records were consistent with Dr. Zincone's own mental status examination. As Dr. Zincone explained in his opinion, Plaintiff's mental health condition remained at a severe level of intensity and frequency and he continued to have a severe functional impairment in the domains necessary for gainful employment. (Tr. 2007-2008).[2]

---

[2] The Commissioner raises the issue that Dr. Zincone's opinion determines a matter reserved for the Commissioner — whether Plaintiff can work. (Doc. 21, p. 30, 32). *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (finding that the RFC determination and ability to work is within the province of the ALJ, not of doctors). The Court finds Dr. Zincone's statement that Plaintiff's severe and persistent symptoms would cause severe functional impairments in the domains necessary to obtain and maintain gainful employment is not equivalent to an opinion that

These domains included ability to control anger and irritability. (Tr. 2007-2008). Thus, when considering the records as a whole, the Court finds that the ALJ erred in assigning little weight to Dr. Zincone's opinions.

### B.    VA Disability Rating

Plaintiff argues that the ALJ erred in not assigning sufficient weight to Plaintiff's VA disability rating. (Doc. 21, p. 11). Plaintiff contends that the VA disability rating shows that Plaintiff has an 80% service-connected disability rating and also finds that Plaintiff is unemployable due to his service-connected disability. (Doc. 21, p. 11-12).[3] Plaintiff argues the ALJ's reasons to assign limited weight to the VA disability rating were not supported by the record. The Commissioner argues that ALJ thoroughly and properly considered the VA disability rating in assessing the RFC and in deciding Plaintiff was not disabled. (Doc. 21, p. 20).

When the record before the ALJ contains another agency's decision – such as a VA disability rating – the Court must consider two questions in deciding whether

---

Plaintiff is unable to work. (Tr 2008). But even if portions of this statement would be a decision reserved to the Commissioner, Dr. Zincone's remaining opinions are not based solely on Plaintiff's subjective complaints and do not conflict in any material way with Dr. Zincone's mental status examination or the other evidence of record.

[3] In a footnote, Plaintiff states that the 80% VA disability rating and his individual unemployability were based mainly on Plaintiff's PTSD. (Doc. 21, p. 13, n.1). Plaintiff also has 10% rating for three physical impairments. (Doc. 21, p. 13, n.1). Because the physical impairments rating alone would not equate to a finding of total disability, Plaintiff did not request review of the ALJ's reasons for rejecting the VA's findings regarding Plaintiff's physical impairments. (Doc. 21, p. 13, n.1). Thus, for this issue, the Court will focus on Plaintiff's PTSD.

an ALJ properly declined to follow that agency's decision. *Maldonado v. Comm'r of Soc. Sec.*, 861 F. App'x 402, 404-405 (11th Cir. 2021) (citing *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020)). "First, 'the court must ask whether the ALJ's decision shows that she considered the other agency's decision.' [ ] Then, 'if the ALJ discussed the other agency's decision, the court moves on to the second step of the analysis: whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision.'" *Id.* (quoting *Noble*, 963 F.3d at 1330).

Here, the ALJ's decision shows that she considered the VA records and evaluations. (Tr. 1254-57). The ALJ acknowledged: (1) on July 23, 2017, the VA determined that Plaintiff was unable to secure or follow a substantial gainful occupation as a result of his service-connected disability of PTSD; (2) as of December 8, 2017, the VA concluded Plaintiff had an 80% service-connected disability, but was being paid at the 100% rate because he was unemployable due to his service-connected disabilities. At that time, the VA determined Plaintiff was not totally and permanently disabled due solely to his service-connected disabilities; and (3) on October 22, 2018, the VA concluded that Plaintiff had been totally and permanently disabled due solely to his service-connected disabilities since August 27, 2018. (Tr. 1262). The ALJ afforded the VA's determination of disability only limited weight because she found it generally conflicted with substantial evidence

of record. (Tr. 1262). Thus, the ALJ satisfied the first question by thoroughly considering the VA's disability decision.

As to the second question, the Court must determine whether substantial evidence supports the ALJ's decision to depart from the VA's disability determination when finding Plaintiff not disabled during the relevant time period under the Social Security Administration's regulations. *Maldonado*, 861 F. App'x at 404-405. Plaintiff challenges the four reasons that the ALJ articulated when affording the VA's disability determination limited weight. (Tr. 1262). The ALJ found the following:

> In this case, the VA's determination of disability is only entitled to limited weight because it is generally inconsistent with the substantial evidence of record. First, the claimant's mental impairments (including his PTSD, which represents the most impairing condition according to the VA) existed prior to the alleged onset date, did not prevent the claimant from performing substantial gainful activity, and there is no significant worsening of symptoms since the alleged onset date (Exhibits 23D; 3F/87, 96-99; 4F/75; 7F/28, 113-120, 194, 229, 241, 251). Second, mental status findings have generally been unremarkable throughout the period at issue, even though the claimant's outpatient treatment has been inconsistent with large treatment gaps, failures to appear for scheduled appointments, self-discontinuation of medications, and declinations of counseling or therapy (Exhibits 8F/160-164; 10F/8, 55-56, 86). Notably, the claimant has continually demonstrated cooperative behavior even when anxious or depressed and has generally displayed normal attention, concentration, and memory (Exhibits 3F/53, 66, 73; 4F/77; 7F/30, 44-45; 8F/20-21, 70, 88, 100, 134, 172, 188, 205; 10F/32, 42, 78-79). Third, he has not needed crisis stabilization unit or psychiatric hospitalization even though his outpatient treatment has been inconsistent. Fourth, the claimant has

> admitted rather extensive daily activities which are inconsistent with a finding of disability, including being able to pay bills, count change, handle savings accounts, and use a checkbook or money orders (Exhibit 4E/4).

(Tr. 1262).

## 1. Worsening of Symptoms

In the decision, the ALJ found Plaintiff's mental impairments existed prior to the alleged onset date, they did not prevent him from working, and there was no evidence of significant worsening of symptoms since the alleged onset date. (Tr. 1262). Plaintiff contends that in January 2015, approximately a month after the alleged onset date, Plaintiff told his mental health provider that he lost his job due to his mental health symptoms and also explained the same at a prior hearing. (Doc. 21, p. 13). Plaintiff claims that this evidence shows that his PTSD and anxiety worsened around the alleged onset date. (Doc. 21, p. 13). The Commissioner argues that Plaintiff only cited his subjective statements in January 2015 to a mental health provider and his statement at a prior hearing, but failed to cite evidence that his conditioned worsened at that time. (Doc. 21, p. 23).

In January 2015, Plaintiff reported to a mental health professional that he was experiencing an impaired level of anger symptoms, and these symptoms impacted his ability to hold down a job. (Tr. 622). The mental health professional noted that Plaintiff was SC (service-connection) for PTSD, and suspected that this condition may underlie his irritability. (Tr. 622). Plaintiff reported that he was fired from his

last job at a home improvement store several months before the visit. (Tr. 622). He testified that one of the customers at Home Depot resembled someone from the Middle East, and he "[k]ind of lost it, and that's when I had a little bit of homicidal ideations." (Tr. 42-43).

The ALJ found "[f]rom December 1, 2014, the alleged onset date, through the date last insured, the record reveals inconsistent treatment with no significant worsening of symptoms. In fact, the alleged onset date does not correspond to any acute mental health event. At most, two weeks after the alleged onset date, on December 15, 2014, the claimant agreed to attend a psychotherapy appointment, and it was scheduled for January 2, 2015 (Exhibit 7F/63)." The ALJ then noted that Plaintiff complained of racing thoughts, self-isolation, and sleep disturbance at his therapy session in January 2015. (Tr. 1254). She also noted that Plaintiff claimed he was fired from his last job a few months before the therapy session. (Tr. 1254). She further noted that Plaintiff "presented as detached and evasive with limited eye contact and restricted affect." (Tr. 1254). Yet, she then found, "[h]owever, akin to pre-alleged onset date mental status findings, he was focused with grossly intact recent and remote memory (Exhibit 3F/73)." (Tr. 1254).

The ALJ also considered Plaintiff's mental impairments that preceded the alleged onset date and noted they did not preclude Plaintiff from performing substantial gainful activity. (Tr. 1254). She found, "[i]mportantly, the claimant was

moderately depressed and anxious at his mental health evaluation on January 22, 2013," but nonetheless was cooperative with good eye contact and grossly intact recent and remote memory. (Tr. 1254). The ALJ found that similarly in June 2014, Plaintiff was moderately depressed, mildly agitated, and anxious. (Tr. 1254). But he was also oriented times four, focused, and cooperative with grossly intact recent and remote memory. (Tr. 1254). The ALJ likewise noted that in July 2014, his medications were adjusted in response to subjective complaints of increased anxiety. (Tr. 1254). However, he presented as calm and pleasant on that date. (Tr. 1254).

While the ALJ thoroughly considered the medical records before and at the time of the alleged onset date, the ALJ ignored the triggering event that caused Plaintiff to claim a December 1, 2014 onset date. Plaintiff lost control when seeing a Middle Eastern customer, and this episode caused Plaintiff to be terminated from his position at Home Depot. And while the ALJ noted that Plaintiff experienced mental health symptoms that preceded the alleged onset date, and these symptoms did not preclude him from employment, she did not fully consider the effect of Plaintiff's mental health on his actions when he was terminated. The Court finds the ALJ's first reason is unpersuasive.

## 2.   Mental Status Examinations and Gaps in Care

Plaintiff claims that the ALJ erred in asserting that Plaintiff's mental health examinations had been generally unremarkable. (Doc. 21, p. 14). Plaintiff also

claims that while portions of some records show generally unremarkable mental health examinations, others show Plaintiff: had a dysphoric and detached mood with a restricted affect; was evasive; had limited eye contact; had a restricted and blunt affect, with reduced concentration; and had deficiencies in memory, intrusive thoughts, images, perceptions, and nightmares. (Doc. 21, p. 14).

The Commissioner argues the ALJ thoroughly considered the VA's evidence and found it was inconsistent the mental and physical examination findings and treatment history. (Doc. 21, p. 22). The Commissioner claims the ALJ's lengthy decision showed she properly considered the record and Plaintiff's condition as a whole during the entire period at issue. (Doc. 21, p. 23).

The ALJ properly noted that Plaintiff had treatment gaps, failures to appear for scheduled appointments, chose to discontinue medications, and chose not to participate in counseling or therapy during the relevant period. (Tr. 1262). Yet while the ALJ thoroughly considered Plaintiff's medical records, including the mental health examinations, the ALJ's finding of generally unremarkable mental health examinations did not take into account the other remarkable findings. As stated above, an ALJ may not simply cite positive or neutral observations to show a tension between the physicians findings and their opinions. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262-63 (11th Cir. 2019). The mental health records showed findings of irritable and tense mood, constricted or blunted affect, sleep issues, and

anger. (Tr. 1998-99, 2006, 2007). Because the Court is remanding this matter, the Court will require the Commissioner to reconsider the VA disability rating in light of the mental status examination records and avoid placing such heavy emphasis on the positive or neutral examination findings that do not reflect Plaintiff's overall mental health.

### 3.    Daily Activities

The ALJ also discounted the VA disability finding based on Plaintiff's "extensive daily activities which are inconsistent with a finding of disability, including being able to pay bills, count change, handle savings accounts, and use a checkbook or money order." (Tr. 1262). Plaintiff argues the ALJ erred in categorizing his daily activities as "extensive" and inconsistent with Plaintiff's impairments. (Doc. 21, p. 17). The Commissioner claims that these activities are not indicative of the alleged disabling limitations suggested in the VA's disability ratings decision. (Doc. 21, p. 26).

Although an ALJ may consider daily activities, the ALJ here did not explain why daily activities such as paying bills or counting change are inconsistent with Plaintiff's alleged disabilities, including anger issues, hypervigilance, suspiciousness, panic attacks, sleep issues, and problems in relationships with others. (Tr. 2005). These daily activities can be done at any time and without having to

interact with others. Without an explanation, the Court cannot determine that substantial evidence supports this reason.

Because the Court is remanding this action, the Court will require the Commissioner to reconsider the VA's disability rating given all of the evidence of record.

### III.    Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Dr. Zincone's opinions and the VA disability rating in conjunction with the medical and other evidence of record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and thereafter close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on January 14, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties